## In Re Anonymous No.4 D.B. 81

Disciplinary Board Docket no. 4 D.B. 81.

To the Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania:

ELLIOTT, *Member,* July 23, 1982—Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On January 22, 1981, the Office of Disciplinary Counsel filed a petition for discipline against respondent alleging violations of D.R. 1-102(A)(3) through (6), D.R. 7-102(A)(4) and (5), D.R. 7-106(A), D.R. 9-102(A) and D.R. 9-102(B)(3) and (4). These charges arise out of a series of incidents in which respondent allegedly misappropriated funds held in escrow or in trust, misrepresented his deeds to others, including a court, and failed to return such funds to a client promptly upon demand. No answer was filed to the petition for discipline.

A hearing was held before hearing committee [ ] and on January 7, 1982, respondent's counsel was advised by letter that the hearing committee would find substantial disciplinary violations. Respondent was invited to present further evidence to the hearing committee concerning the sanction to be imposed. Again, there was no response. On April 26, 1982, the hearing committee filed its report, finding violations of D.R.1-102(A)(3) through (6), D.R.7-102(A)(5), D.R.9-102(A), and D.R.9-102(B)(3) and (4). The recommended sanction was a five year suspension.

On May 7, 1982, Disciplinary Counsel excepted to the hearing committee report and argued in favor of disbarment. Respondent also excepted and filed a brief in support of his exceptions in which he requested oral argument. Notwithstanding his request, respondent failed to appear before the hearing panel of the board.

## II. STATEMENT OF FACTS
### (a) Charge I:[A]

The facts found by the hearing committee, which are fully supported by the record, are as follows: In 1975, respondent was retained by a [A] in connection with a domestic dispute. [A's wife] was represented by counsel with whom respondent negotiated a property settlement agreement providing that $10,000 would be paid by [A] into escrow with respondent and then paid over to [A's wife] upon the entry of a final divorce decree. Respondent was specifically designated as the "escrowee" in the property settlement agreement.

A final divorce decree was entered on November 4, 1976. Between the dates on which respondent received the $10,000 and November 4, 1976, he failed to maintain the funds in escrow and in fact

converted some of the funds to his own use without the knowledge or consent of [A's wife], the person for whose benefit the escrow was established. Consequently, respondent did not turn over the $10,000 to [A's wife] when it was properly demanded after the divorce decree.

On February 8, 1977, three months after respondent was obligated to turn over the funds to [A's wife], he had only paid her $1,000. That day, her attorney filed a complaint in assumpsit against him to procure a turnover of the remaining $9,000 to [A's wife]. During the pendency of this lawsuit, from February 8, 1977 to January 14, 1980, respondent continued to convert the $9,000 fund to his own use without the permission of [A's wife] and against the instructions of his own client, [A].

During the course of the trial, respondent was called as a witness. Under oath, he represented to the trial judge that the $9,000 was in an escrow account at [  ] Bank. He further testified that he stood ready to turn over the funds if so ordered. Both of those representations to the trial judge were false when made. (Report of hearing committee, findings of fact 12, 13). On January 14, 1980, the court decided in favor of [A's wife].

Even after judgment was entered and despite repeated requests, respondent continued to delay in paying the funds to [A's wife]. Finally, on March 13, 1980, he advised her attorney that a check had been forwarded. This representation was also false when made. On March 21, 1980, respondent sent her attorney a check in the amount of $11,145 which was not honored by the drawee bank because of insufficient funds. Not until April 15, 1980 nearly three and one half years after he was required to turn over escrow funds to [A's wife], did respondent finally discharge his obligation.

On April 15, 1980, respondent deposited directly

into the account of [A's wife] attorney, in satisfaction of his obligation to [A's wife], a money order payable to [B]. This money order was procured from another client of respondent's and was given to respondent for an entirely different purpose.

### (b) Charge II: [B]

[B] was widowed in March, 1980. In April, 1980, she asked respondent to assist her in investing $18,500 of life insurance proceeds in a corporation which respondent represented. At respondent's request, she prepared two money orders in the amounts of $11,500 and $7,000 respectively and tendered them to respondent for the sole purpose of making the investment. These money orders were given to respondent on April 15, 1980.

The corporation which respondent represented was never advised of [B's] desire to invest or that she had turned over money orders in the amount of $18,500 to respondent. Yet respondent executed a promissory note from the corporation to [B] showing a principal indebtedness of $18,500 and interest at the rate of 30 percent per annum. Respondent had no authority from the corporation to execute this note on its behalf and never turned over the funds to the corporation. Rather he used the $11,500 money order to attempt to extricate himself from his problems described in Charge I, supra, and converted the $7,000 money order to his own use, both without the knowledge or permission of [B].

Shortly after this transaction, [B] informed respondent that she no longer wished to make the investment and wanted her money back. Respondent promised to issue a check to [B] and on May 7, 1980, respondent drew a check to [B] in the amount

of $18,962, representing her investment plus interest. [B] immediately telephoned the drawee bank who advised her that there were no funds in the account on which respondent drew the check.

Upon confronting respondent with this information, respondent said that he would call the bank and clear up whatever confusion might exist. When [B] deposited the check several days later, it was returned with the notation "account closed."

On May 22, 1980, respondent was given letters of administration for the estate of his late uncle. On June 23, 1980, he withdrew $18,962 from the estate and discharged his obligation to [B].

### III. DISCUSSION

The facts of this case reveal repeated and continuous ethical violations of a serious nature. Respondent's conduct as set forth above was plainly irresponsible and dishonest, placing his own interests and desires before those of his clients in situations where his ethical obligations as an attorney could not be clearer or more fundamental. In this egregious case the board is compelled to agree with Disciplinary Counsel, sustain its exceptions to the recommendation of the hearing committee and recommend that respondent be disbarred.

That respondent's conduct violates numerous disciplinary rules is obvious and unfortunate. On at least two occasions respondent converted clients' funds to his own use without the knowledge of the client and contrary to the intent of the client in giving him the money. This conversion is illegal and dishonest and violates D.R. 1-102(A)(3), (4) and (6), and D.R. 9-102(A). Respondent did not properly account for funds given to him by clients and did not promptly pay over such funds in violation of

D.R.9-102(B)(3) and (4). Perhaps most serious of all, respondent lied about his conduct to his clients, to fellow members of the bar and to a judge while testifying under oath. See report of hearing committee, findings of fact 12, 13. His repeated misrepresentations violate D.R.1-102(A)(5) and D.R.7-102(A)(5).

The conclusion of the board that disbarment is warranted in this case does not necessarily follow from the number of disciplinary rules violated or even the gravity of a particular violation but rather from the ongoing and cumulative nature of the violations. Respondent argues that his conduct resulted from merely a "lapse of judgment." However, respondent's lapse of judgment existed for almost four years and constitutes the most obvious and most fundamental violations.

The duration of respondent's misconduct and its fundamental nature warrant disbarment. Here respondent received the first funds into escrow in June, 1976. Respondent converted those funds to his own use. Later more funds were paid to him and similarly converted to his own use. When called upon to turn over the escrowed funds, he lied to a fellow member of the bar, lied under oath to a judge, drew a check knowing there were no funds to cover it, and finally discharged his obligation as escrowee by converting funds from yet another client, the recently widowed [B]. He lied to her, drew still another check on an account with no funds and finally returned the money to the second client by withdrawing funds from an estate which he was administering. This conduct continued until May, 1980.

No responsible lawyer could have a four-year "lapse of judgment." Respondent either knew the extent of his disciplinary violations at the time and

simply chose to ignore his ethical obligations or he does not and cannot understand the most basic ethical obligations. In either case, he cannot practice law in this Commonwealth.

## IV. RECOMMENDATION

The board respectfully recommends to your honorable court that respondent [   ] be disbarred forthwith.

## ORDER

O'BRIEN, *C.J.*, And now, August 31, 1982, the recommendation of the Disciplinary Board dated July 23, 1982, is accepted; and it is ordered that [respondent] be and he is disbarred from the Bar of this Commonwealth, and he shall comply with all the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement.

Mr. Justice McDermott did not participate in the consideration or decision of this matter.